```
              UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT CHARLESTON
```

**ARCH SPECIALTY INSURANCE COMPANY,**

      Plaintiff

v.                                        Civil Action No. 2:08-0285

**GO-MART, INC.; J.T. DAVENPORT
& SONS, INC.; and ROBERT D. RADER,**

      Defendants

and

**GO-MART, INC.,**

      Third-Party Plaintiff,

v.

**GAB ROBINS NORTH AMERICA, INC.;
and SOUTHERN GUARANTY INSURANCE
COMPANY,**

      Third-Party Defendants

and

**J.T. DAVENPORT & SONS, INC.;
and ROBERT D. RADER,**

      Third-Party Plaintiffs,

v.

**SOUTHERN GUARANTY INSURANCE
COMPANY,**

      Third-Party Defendant

<u>**MEMORANDUM OPINION AND ORDER**</u>

Pending is the motion of third-party defendant Southern Guaranty Insurance Company ("Southern Guaranty") to bifurcate issues in this action, filed May 27, 2009.

## I. Background

This factually complex insurance action arises from a state court action ("the underlying action"), filed February 7, 2006, in which Joe Meadows was awarded a judgment of $2,052,848.18 against truck driver Robert Rader, his employer J.T. Davenport & Sons, Inc. ("Davenport"), and Go-Mart, Inc. ("Go-Mart"), after Rader's tractor trailer drove over Meadows's legs in a Go-Mart parking lot on June 13, 2005.  At the time of the accident, Go-Mart was insured by Arch Specialty Insurance Company ("Arch"), and GAB Robins North America, Inc. ("GAB Robins") was the third party administrator of Go-Mart's policy. (Document No. 1 at ¶ 14; Document No. 24 at ¶¶ 11-12).  Davenport was insured by Southern Guaranty under three separate policies of insurance, including a business automobile policy, a commercial general liability policy, and an umbrella policy.  (Document No. 44 at ¶ 8).

On June 22, 2005, Go-Mart notified GAB Robins of the

potential claim stemming from the June 13, 2005, accident. (Document No. 24 at ¶ 16). Go-Mart provided GAB Robins with a copy of the summons and complaint in the underlying action on February 23, 2006. (Id. at ¶ 19). GAB Robins pursued indemnification for Go-Mart from Davenport pursuant to the terms of a delivery service agreement between Go-Mart and Davenport, under which Davenport was required to defend, indemnify, and hold Go-Mart harmless against any claims arising out of the operation of any Davenport equipment on Go-Mart's premises. (Id. at ¶ 21; Document No. 19 at cross-claim ¶¶ 4, 8)).

As Davenport's insurer, Southern Guaranty initially agreed on July 31, 2006, to provide a defense and indemnity to Go-Mart, subject to a reservation of rights. (Document No. 19. at cross-claim ¶ 9). The $2,052,848.18 verdict in favor of Meadows was entered against Go-Mart, Davenport and Rader in October of 2007. (Document No. 24 at ¶ 24). On February 25, 2008, after post trial motions had been denied, Southern Guaranty withdrew its defense of Go-Mart and disclaimed its obligation to indemnify Go-Mart in any further proceedings in the underlying action, including but not limited to a state court appeal. (Document No. 19. at cross-claim ¶ 11).

GAB first notified Arch of the underlying action on or

3

about March 6, 2008, at which point the underlying action had already been tried, judgment had been entered, and post trial motions had been denied. (Document No. 24 at ¶ 22; Document No. 1 at ¶¶ 19-22). Under the terms of Go-Mart's policy, Arch had the right to conduct an investigation, defense, or settlement of any claim or suit and to appeal any judgment in excess of Go-Mart's self-insured retention, and Go-Mart was required to provide Arch with timely and sufficient notice of any occurrence, claim or suit. (Document No. 1 at ¶¶ 17- 18). Compliance with the notice provisions was a condition precedent to coverage and a failure to comply would void the coverage otherwise provided by the policy unless breach was waived in writing. (Id.).

Arch instituted this action on April 30, 2008, seeking a declaration that it is not obligated to defend Go-Mart or to indemnify Go-Mart for any judgment entered against it in the underlying action. Go-Mart filed (1) a crossclaim against Davenport for indemnification under the terms of their service agreement; (2) third-party claims against GAB Robins for breach of contract and indemnification; and (3) a third-party claim against Southern Guaranty seeking a declaratory judgment that Southern Guaranty is obligated under the service agreement between Go-Mart and Davenport and under Davenport's three

insurance policies to indemnify Go-Mart. Go-Mart also asserts bad faith and violation of the West Virginia Unfair Trade Practices Act ("UTPA"), West Virginia Code § 33-11-1 et seq., against Southern Guaranty. Davenport and Rader filed third-party claims against Southern Guaranty for indemnification under the three policies and for bad faith and violation of the UTPA.

## II. Discussion

Southern Guaranty moves the court to bifurcate and stay all claims against Southern Guaranty such that the court would decide the issues in three phases and in the following order:

> First, whether Arch has an indemnity obligation due and owing to Go-Mart for the underlying tort case judgment and if not, the liability, if any, of GAB. Second, if and only if, the Court determines that Arch does not have an obligation to indemnify Go-Mart, then whether Southern Guaranty has an obligation to indemnify Go-Mart for the judgment obtained in the underlying tort case. Third, if the Court concludes that Arch does not have such obligation but Southern Guaranty does, then, and only then, consider the liability if any, of Southern Guaranty for the alleged violations of the West Virginia Unfair Claims Practices Act and Common Law Bad Faith.

(Document No. 159 at 2). Southern Guaranty does not propose bifurcation of discovery.

Southern Guaranty contends that this is the most

efficient way to approach the issues because:

    (1)  According to Southern Guaranty, if the court determines that Arch has an indemnity obligation to Go-Mart, the coverage claims against Southern Guaranty become moot; and

    (2)  Under the terms of Davenport's insurance policies, Go-Mart had a duty to notify Arch of the claim against it in order to qualify as an indemnitee under Davenport's policies, and notice to Arch is precisely the issue involved in Arch's claim against Go-Mart.

Davenport, Rader, Arch, Go-Mart, and GAB filed a collective response to Southern Guaranty's motion to bifurcate in which they agree that claims should be bifurcated but disagree with Southern Guaranty as to which claims should be stayed.[1] Davenport, Rader, Arch, Go-Mart, and GAB contend that the Southern Guaranty coverage issues should be resolved first. As grounds for this contention, they assert that:

    (1)  If the court finds that Southern Guaranty must provide coverage to Davenport for the indemnification of Go-

---

[1] Arch also filed a separate response in order to clarify an issue not fully addressed in the joint response. Arch asserts therein that if it is obligated to make any payment on behalf of Go-Mart, it has a right of subrogation.

>     Mart, then the remaining claims, except for the bad faith and UTPA claims, will be moot; and
> 
> (2) Even if the court finds that Arch has a coverage obligation, Davenport's duty to Go-Mart and Southern Guaranty's coverage will need to be determined so that the order of payment on the various coverages can be decided.

Federal Rule of Civil Procedure Rule 42(b) allows bifurcation of issues, claims, crossclaims, counterclaims, or third-party claims "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). Respected commentators have observed:

> The provision for separate trials in Rule 42(b) is intended to further the parties' convenience, avoid delay and prejudice, and serve the ends of justice. It is the interest of efficient judicial administration that is to be controlling under the rule, rather than the wishes of the parties. The piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the same issue in severed claims is not to be the usual course. Thus Rule 42(b) should be resorted to only in exercise of informed discretion when the court believes that separation will achieve the purpose of the rule.

9 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 2388 (3d ed. 2004). The decision to bifurcate a trial is left to the sound discretion of the district court. court. <u>Shetterly v. Raymark Indus., Inc.</u>, 117 F.3d 776, 782 (4th

Cir. 1997).

The court concludes that it would promote judicial economy to stay only the bad faith and UTPA claims and to consider all of the coverage claims in unison. As illustrated by the arguments made by the parties in their briefing, the issues relating to coverage overlap. For instance, whether Go-Mart failed to notify Arch may be relevant to both Arch's claim for declaratory judgment as well as the claims based on Southern Guaranty's coverage obligations inasmuch as, according to Southern Guaranty, such a failure to notify Arch may have also voided Go-Mart's coverage as an indemnitee under Davenport's insurance. Also, it is possible that the court may find that more than one of the parties has an obligation to indemnify Go-Mart, and if it does, then it will also need to determine the order of payment.

Bifurcation and a stay of the bad faith and UTPA claims would promote judicial economy because resolution of these claims turns on whether the court finds that Southern Guaranty violated the terms of one of the insurance policies. Davenport, Rader, Arch, Go-Mart, and GAB do not disagree that the bad faith and UTPA claims should be addressed last.

### III. Conclusion

Based upon the foregoing, it is ORDERED that Southern Guaranty's motion to bifurcate be, and it hereby is, granted to the extent that Southern Guaranty seeks to bifurcate and stay the bad faith and UTPA claims against it, and otherwise denied. The third-party claims of Go-Mart and Davenport against Southern Guaranty based on bad faith and the UTPA are ORDERED stayed pending resolution of all coverage issues, including those coverage issues arising under the insurance policies issued by Southern Guaranty.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED: July 24, 2009

John T. Copenhaver, Jr.
United States District Judge